IN THE UNITED STATE DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **JIMMY A. BELL**<br>9610 Marlboro Pike<br>Upper Marlboro, MD 20772<br><br>   Plaintiff,<br><br>v.<br><br>**R&R ENTERTAINMENT, L.L.C.,**<br>**t/a "CLUB 55,"**<br>55 K Street, S.E.<br>Washington, D.C. 20003<br><br>and<br><br>**55K, INC., t/a "CLUB 55,"**<br>55 K Street, S.E.<br>Washington, D.C. 20003<br><br>   Defendants | Civil Case No.:<br><br>JURY DEMAND |

## COMPLAINT

COMES NOW, Plaintiff Jimmy A. Bell by and through counsel, Janelle N. Richards, Esquire of the Law Office of Jimmy A. Bell, P.C. and respectfully presents this Complaint against the Defendants for violations of the D.C. Human Rights Act and other common law torts.

### JURISDICTION AND VENUE

1. Plaintiff is a resident of Maryland, the Defendants are 55K Inc., incorporated in the District of Columbia, and R&R Entertainment, L.L.C.; registered in the District of Columbia, and the amount in controversy exceeds the sum or value of $75,000.00 and therefore jurisdiction is proper.

2. Venue is proper in the District of Columbia as the actions complained of occurred in the District of Columbia.

1

## STATEMENT OF FACTS

3. Plaintiff is a resident of Maryland.

4. Defendants are, respectively, a corporation incorporated and operating within the District of Columbia, and a limited liability corporation registered and operating within the District of Columbia.

5. On the night of March 26 into the early morning hours of March 27, 2006, Plaintiff and Deon Green ("Mr. Green") were patrons of Defendants' night club.

6. Upon arrival at Defendants' night club, Plaintiff noticed, as he has had occasion to notice in the past, that a Metropolitan Police Department cruiser was parked in the alleyway adjacent to the entrance of the club.

7. After paying the entry charge for himself and Mr. Green, Plaintiff asked where they might be seated. Plaintiff and Mr. Green were informed that for the price of a bottle of Champagne, they would be seated in the VIP section. Plaintiff ordered two bottles of Champagne, and he and Mr. Green took their places in the VIP area.

8. The VIP area of the Club 55 is a reserved section, where guests are seated on a red couch for their comfort. Plaintiff ordered additional Champagne for some of the women present in the Club. Plaintiff and Mr. Green then proceeded to watch the Club 55's entertainment, which on that evening was a talent competition.

9. After spending quite some time at Club 55 in the VIP area, without any incident whatsoever, Plaintiff and Mr. Green decided they wanted to leave. Plaintiff asked for his bill, and he and Mr. Green sat and waited for it to arrive, and to see who the winner of the talent competition would be.

10. Before their bill had been taken care of, a woman dressed as a man came into the VIP area and sat on the red couch Plaintiff had paid money to reserve for himself and Mr. Green. Plaintiff did not know this person; he looked to make sure he did not know this person, and then asked whether they were acquainted. This person responded to Plaintiff's inquiry with a profanity. Mr. Green started to intervene, but Plaintiff said that it was the job of Club 55's security to take care of unruly patrons, and they should get security to address the situation.

11. Plaintiff promptly asked his server, Janie, if she would call security because he did not know the person who had sat on the couch whose use he had paid for, and he was uncomfortable with a stranger just coming up, taking a seat and using profanity. Janie attempted to explain to the person that she was in the VIP section, that Plaintiff had paid to be there, and that it was an area where a special entry fee was required.

12. The woman responded to Janie by saying "F-ck you, b-tch, I ain't gotta move nowhere." Mr. Green again indicated that he would like to intervene with the woman on Plaintiff's behalf, and Plaintiff again stated to Mr. Green that the job of intervention with an unruly patron was one for Club 55's security staff.

13. At that time, Janie brought a security person to the VIP area. The security guard was about 5'11", weighed around 280-300 pounds, and had twist-type braids in his hair. He spoke with the woman who was being disruptive, and she became irate and screamed profanities at the security guard. She then pointed at Plaintiff and Mr. Green and stated she would meet them out front where she would "kill" them.

14. Plaintiff asked the security person to remove the woman from the premises, and to call the police as a threat had been made on his life that made him fear greatly for his safety in and around Club 55. Plaintiff again asked the security guard to call the police. The security guard did not do so. He stated to Plaintiff, "She's just a girl."

15. The woman then shouted "F-ck you, I'll get you now." She and at least three other people closed in on Plaintiff and Mr. Green. Plaintiff and Mr. Green were trapped, with no place to retreat or avenue of escape and with their backs literally to the wall. These people assaulted Plaintiff and Mr. Green. Mr. Green was struck in the head with a glass.

16. Plaintiff continued to shout for the club staff to call the police. The Club staff continuously failed to heed Plaintiff's request, and instead stated that they were going to remove Plaintiff and Mr. Green from the club. Mr. Green stated that since there was a police cruiser parked outside, he would go and get the police himself. Mr. Green proceeded to leave the club, followed by several persons who picked up bottles and glasses from tables as they followed Mr. Green. Plaintiff had never before seen Club staff allow patrons to pick up glasses and bottles and attempt to exit the club with such items, but on this night, the Club staff allowed it to occur.

17. Plaintiff walked towards the entrance of the Club to ensure Mr. Green had made it safely to the police cruiser parked outside of the Club. When the Plaintiff arrived at Club 55's front door, Plaintiff observed four people attacking Mr. Green with bottles. Security was standing by, watching and did nothing to intervene or stop

the attack on Mr. Green. Although security is responsible for the safety of patrons within 100 feet of the club, this vicious assault, occurring right under the Club 55's entry awning, prompted no response from security.

18. Plaintiff had his back to the door of the Club 55. He and Mr. Green turned to security and again pleaded that they call the police. The security guard at that point was more concerned with Plaintiff's tab being paid. Plaintiff informed the security guard that the incident was the Club's fault, that he had told them from the beginning to call the police, and they had heard and did not do so. In fact, security did nothing. The security person started shouting at Plaintiff that he did not work for Plaintiff, that Plaintiff ought not to talk to him in that manner, and that if Plaintiff continued to do so, he would kick Plaintiff's ass.

19. Another security guard thereupon grabbed Plaintiff. This security guard carried Plaintiff outside and told Plaintiff he could not come back into the Club 55. Plaintiff still had not paid his tab. He had given a credit card, and the charge had cleared, but he had not yet signed the charge of over $700.00. It was at this point that Plaintiff realized that he had been stabbed, and that he was bleeding profusely.

20. Plaintiff asked to come back into the Club 55, because he desperately needed to call for medical help and report the incident to the police. Plaintiff pointed out to Club 55 staff that the persons responsible for the assault on Mr. Green were still outside the Club 55, and that "your girl with the knife" was "right there." Club 55 security and staff still did not call the police.

21. Plaintiff held his blood-covered hand out and said that he wanted Club 55 security and staff to see it. They did. The owner of the Club 55, Roland Lee ("Mr. Lee"), had by now arrived on the scene. Plaintiff told Mr. Lee "You can see what's going on – call the police." Mr. Lee did not call the police. Mr. Lee asked that the Plaintiff speak with him; Plaintiff replied that he could not talk, he had been stabbed. Plaintiff again asked Mr. Lee to call an ambulance, and the police. Mr. Lee still would not comply with the Plaintiff's request.

22. Mr. Lee and his staff implored Plaintiff "not to do this." Plaintiff asked "Do what? I'll pay your bill. I've been stabbed, and I need you to call an ambulance and call the police." No one called an ambulance; no one called the police. At this point, the attackers were still present just outside the Club 55.

23. A Club 55 management employee, with whom Plaintiff had not had any interaction with during the course of the evening, came along and told Plaintiff he would "f-ck" Plaintiff "up." He insisted that Plaintiff come and sign for his bill. Plaintiff was still bleeding profusely from a stab wound; no one had called an ambulance. Plaintiff called to Mr. Lee, and said "Did you see this?" The employee continued to state he would "f-ck" Plaintiff "up."

24. By now, Plaintiff could see that the crowd in front of the Club had begun to disperse. Another security person named Tyree, acquainted with Plaintiff from Plaintiff's prior visits to the Club 55, came and asked Plaintiff to talk. Plaintiff said again that he could not talk; that he had been stabbed; that the club staff, management, and owner knew he had been stabbed; that he was bleeding; that the club staff, management, and owner knew he was bleeding; that he had asked over

and over for an ambulance and the police to be called; that the club staff, management, and owner knew he had made these requests; and that no one, not a staff member, nor a manager, nor the owner had called an ambulance or the police. Plaintiff informed Tyree that what he intended to do immediately was to drive himself to the hospital, because he had been stabbed and was bleeding and no one would call an ambulance or the police.

25. Plaintiff then left the front of the Club 55, walked down the street to his vehicle, got in, and drove himself to Howard University Hospital ("HUH"). En route, Plaintiff was in a constant struggle to continue driving safely without passing out from considerable blood loss. Doctors and other medical personnel at HUH treated Plaintiff for a stab wound. These doctors and other medical personnel informed Plaintiff that he was very lucky, and that a person of slighter build and weight would certainly have sustained a collapsed lung, and would very possibly have died on the scene. Mr. Green was treated at HUH for a stab wound to the head.

26. Club 55 has a history of violent incidents occurring within and surrounding its premises. Specifically, on November 2, 2005, an off-duty police officer was robbed and assaulted inside the men's bathroom. The off-duty officer was using the restroom when a patron approached the officer from behind and starting beating the officer. The nature of the beating was such that the officer feared for his life and was forced to discharge his service weapon. As a result of this incident, the officer received lacerations on his forehead and sustained a busted blood vessel over his left eye.

27. An incident report regarding the November 2, 2005 beating of an off-duty police officer was reported to the First District Police Station as well as to the Alcoholic Beverage Regulation Administration the very same night.

## COUNT I: NEGLIGENCE

### (All Defendants)

28. Plaintiff re-pleads and re-alleges Paragraphs 1 through 27, with the same force and effect as if set forth separately at length herein.

29. Defendants are incorporated within the District of Columbia.

30. Defendants, as owner of the premises and business, owe a duty of care to their patrons to protect against harm.

31. Defendants breached this duty owed to Plaintiff by failing to intervene and call the police when an unknown woman made threats upon Plaintiff's life in the presence of the Club's security.

32. Plaintiff was stabbed on Defendants' premises because the Defendants breached their duty of care. Had Defendants not breached their duty of care, Plaintiff would not have been stabbed.

33. As a result of the negligent actions of the Defendants, Plaintiff suffered bodily injuries, experienced severe mental anguish, experienced conscious pain and suffering, incurred reasonable and necessary medical and hospital expenses, suffered inconvenience and discomfort, and lost income.

34. Plaintiff seeks the following relief:

35. Compensatory and punitive damages of $500,000 (FIVE HUNDRED THOUSAND).

36. Pre- and post-judgment interest.

37. The cost of litigation, including reasonable attorney's fees and expert witness fees.

38. Such other relief as may be just.

## COUNT II: NEGLIGENCE

### (All Defendants)

39. Plaintiff re-pleads and re-alleges Paragraphs 1 through 38, with the same force and effect as if set forth separately at length herein.

40. Defendants are incorporated within the District of Columbia.

41. Defendants, as owner of the premises and business, owe a duty of care to their patrons to protect against harm.

42. Defendants breached this duty owed to Plaintiff by failing to intervene and/or call the police and an ambulance after Plaintiff had been stabbed upon the Defendants' premises.

43. Plaintiff was stabbed on Defendants' premises because the Defendants breached their duty of care. Had Defendants not breached their duty of care, Plaintiff would not have been stabbed.

44. As a result of the negligent actions of the Defendants, Plaintiff suffered bodily injuries, experienced severe mental anguish, experienced conscious pain and suffering, incurred reasonable and necessary medical and hospital expenses, suffered inconvenience and discomfort, and lost income.

45. Plaintiff seeks the following relief:

46. Compensatory and punitive damages of $500,000 (FIVE HUNDRED THOUSAND).

47. Pre- and post-judgment interest.

48. The cost of litigation, including reasonable attorney's fees and expert witness fees.

49. Such other relief as may be just.

## COUNT III: NEGLIGENT TRAINING & SUPERVISION

### (All Defendants)

50. Plaintiff re-pleads and re-alleges Paragraphs 1 through 49, with the same force and effect as if set forth separately at length herein.

51. Defendants are incorporated within the District of Columbia.

52. Defendants, as owner of the premises and business, owe a duty of care to their patrons to adequately train and supervise employees to protect against harm.

53. Defendants breached this duty owed to Plaintiff by failing to train and/or supervise employees to intervene and/or call the police and an ambulance after Plaintiff had been stabbed upon the Defendants' premises.

54. Plaintiff was stabbed on Defendants' premises because the Defendants breached their duty of care. Had Defendants not breached their duty of care, Plaintiff would not have been stabbed.

55. As a result of the negligent actions of the Defendants, Plaintiff suffered bodily injuries, experienced severe mental anguish, experienced conscious pain and suffering, incurred reasonable and necessary medical and hospital expenses, suffered inconvenience and discomfort, and lost income.

56. Plaintiff seeks the following relief:

57. Compensatory and punitive damages of $500,000 (FIVE HUNDRED THOUSAND).

58. Pre- and post-judgment interest.

59. The cost of litigation, including reasonable attorney's fees and expert witness fees.

60. Such other relief as may be just.

## COUNT IV: ASSAULT

### (All Defendants)

61. Plaintiff re-pleads and re-alleges Paragraphs 1 through 60, with the same force and effect as if set forth separately at length herein.

62. Defendants are incorporated within the District of Columbia.

63. Defendants, as owner of the premises and business, owe a duty of care to their patrons to protect against harm.

64. After having been attacked by numerous unknown individuals, Plaintiff repeatedly requested assistance from the Club's staff. Plaintiff further requested that the staff call the police.

65. A security guard responded to Plaintiff by stating that he did not work for Plaintiff and that he would kick Plaintiff's ass.

66. As a result of the security guards actions, Plaintiff was placed in reasonable apprehension of imminent bodily injury.

67. Plaintiff seeks the following relief:

<021>

68. Compensatory and punitive damages of $500,000 (FIVE HUNDRED THOUSAND).

69. Pre- and post-judgment interest.

70. The cost of litigation, including reasonable attorney's fees and expert witness fees.

71. Such other relief as may be just.

## COUNT V: ASSAULT

### (All Defendants)

72. Plaintiff re-pleads and re-alleges Paragraphs 1 through 71, with the same force and effect as if set forth separately at length herein.

73. Defendants are incorporated within the District of Columbia.

74. Defendants, as owner of the premises and business, owe a duty of care to their patrons to protect against harm.

75. After having been stabbed and while bleeding profusely, an employee of the Defendants approached Plaintiff demanding that Plaintiff pay his bill.

76. Plaintiff informed the employee that he had been stabbed, to which the employee responded that Plaintiff should pay his bill or he would jump on Plaintiff.

77. As a result of the employee's actions, Plaintiff was placed in reasonable apprehension of imminent bodily injury.

78. The owner of the Club, Mr. Lee witnessed this exchange and in failing to correct the employee's behavior, ratified the actions taken by his employee.

79. Plaintiff seeks the following relief:

80. Compensatory and punitive damages of $500,000 (FIVE HUNDRED THOUSAND).

81. Pre- and post-judgment interest.

82. The cost of litigation, including reasonable attorney's fees and expert witness fees.

83. Such other relief as may be just.

## COUNT VI: BATTERY

### (All Defendants)

84. Plaintiff re-pleads and re-alleges Paragraphs 1 through 83, with the same force and effect as if set forth separately at length herein.

85. Defendants are incorporated within the District of Columbia.

86. Defendants, as owner of the premises and business, owe a duty of care to their patrons to protect against harm.

87. After having been attacked by numerous unknown individuals, Plaintiff repeatedly requested assistance from the Club's security staff. Plaintiff further requested that the staff call the police.

88. A security guard responded to Plaintiff by stating that he did not work for Plaintiff and that he would kick Plaintiff's ass. The security guard then proceeded to pick Plaintiff up from behind and carry him from the Club.

89. The security guard's actions constituted an unwanted, offensive touching of Plaintiff's person.

90. Plaintiff seeks the following relief:

91. Compensatory and punitive damages of $500,000 (FIVE HUNDRED THOUSAND).

92. Pre- and post-judgment interest.

93. The cost of litigation, including reasonable attorney's fees and expert witness fees.

94. Such other relief as may be just.

## COUNT VII: VIOLATION OF THE D.C. HUMAN RIGHTS ACT § 2-1402.31
(All Defendants)

95. Plaintiff re-pleads and re-alleges Paragraphs 1 through 94, with the same force and effect as if set forth separately at length herein.

96. The effect of Defendants' acts and practices as enumerated herein has been to deprive Plaintiff of rights secured to him by the D.C. Human Rights Act § 2-1402.31.

97. The D.C. Human Rights Act § 2-1402.31(a)(1) states that it is an unlawful discriminatory practice "to deny, directly or indirectly, any person the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodations" based on sex, source of income, or place of business.

98. Although Plaintiff repeatedly asked that the unruly and violent woman be removed from the Club, the staff refused to do so, stating, "she's just a girl."

99. When Plaintiff continued to request assistance from the Club staff, as well as requesting that the police be called, a security guard responded to Plaintiff by stating that he did not work for Plaintiff and that he would kick Plaintiff's ass.

14

100. The security guard then picked Plaintiff up and carried him from the club, even though he had refused to remove the unknown woman from the premises.

101. The Defendants denied Plaintiff full and equal access to a place of public accommodation when Plaintiff was removed from the Club, but the woman who threatened Plaintiff's life was not removed because she was "just a girl."

102. Plaintiff seeks the following relief:

103. Compensatory and punitive damages of $500,000 (FIVE HUNDRED THOUSAND).

104. Pre- and post-judgment interest.

105. The cost of litigation, including reasonable attorney's fees and expert witness fees.

106. Such other relief as may be just.

### JURY DEMAND

107. Plaintiff demands a trial by jury.

Respectfully submitted,

*Janelle N Richards*
Janelle N. Richards, Bar No. 16520
Law Office of Jimmy A. Bell, P.C.
9610 Marlboro Pike
Upper Marlboro, MD 20772
(301) 599-7620
(301) 599-7623 (Fax)