EXHIBIT #2

** T r a n s m i t   C o n f . R e p o r t  **

P.1                                                         Apr 10 2006  12:19

| Fax/Phone Number | Mode | Start | Time | Page | Result | Note |
|---|---|---|---|---|---|---|
| 3017709245 | NORMAL | 10,12:19 | 7'07" | 24 | * O K | |

LAW OFFICES

# HARMON, WILMOT & BROWN, L.L.P

1010 VERMONT AVENUE, N.W. • SUITE 810 • WASHINGTON, D.C. 20005
Telephone: 1-202-783-9100 · Facsimile: 1-202-783-9103

Herbert N. Harmon        David W. Wilmot        Omer F. Brown, II

## FACSIMILE TRANSMISSION

DATE _____ April 10, 2006 _____

NUMBER OF PAGES (including cover sheet) _____24_____

TO ___ Ms. Catherine Kambanis, President Federal Insurance
       Fed, Inc. _____

FAX NUMBER ___(301) 770-9245 _____

FROM _____ Andrea M. Bagwell, Esq. _____

If there are any problems, please call 1-202-783-9100.

RE: Insured: Club 55, 55K, Inc. 55K Street, S.E., WDC
    Mr. & Mrs. Dickson, Owners
Our firm represents the Club in connection with liquor
licensing issues. The enclosed complaint and summons was
faxed to our office on March 31, 2006. We need to
determine if the insurance company is going to represent
the  Club in connection with this matter. The ANSWER IS
DUE ON OR BEFORE APRIL 18, 2006. please call me to discuss.

LAW OFFICES

# HARMON, WILMOT & BROWN, L.L.P

1010 VERMONT AVENUE, N.W. • SUITE 810 • WASHINGTON, D.C. 20005
Telephone: 1-202-783-9100 - Facsimile: 1-202-783-9103

Herbert N. Harmon        David W. Wilmot        Omer F. Brown, II

## FACSIMILE TRANSMISSION

DATE _____ April 10, 2006 _____

NUMBER OF PAGES (including cover sheet) ____24_____

TO __Ms. Catherine Kambanis, President Federal Insurance__
Fed, Inc.

FAX NUMBER __(301) 770-9245_____

FROM _____Andrea M. Bagwell, Esq._____

If there are any problems, please call 1-202-783-9100.

RE: Insured: Club 55, 55K, Inc. 55K Street, S.E., WDC
Mr. & Mrs. Dickson, Owners
Our firm represents the Club in connection with liquor
licensing issues. The enclosed complaint and summons was
faxed to our office on March 31, 2006. We need to
determine if the insurance company is going to represent
the Club in connection with this matter. The ANSWER IS
DUE ON OR BEFORE APRIL 18, 2006. please call me to discuss.

THANKS,

Andrea M. Bagwell (202) 783-9100

THE INFORMATION CONTAINED IN THIS FACSIMILE MESSAGE IS ATTORNEY PRIVILEGED AND CONFIDENTIAL INFORMATION INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY NAMED ABOVE. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, OR THE EMPLOYEE OR AGENT RESPONSIBLE TO DELIVER IT TO THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE IMMEDIATELY NOTIFY US BY TELEPHONE (COLLECT CALLS ACCEPTED), AND RETURN THE ORIGINAL MESSAGE TO US AT THE ABOVE ADDRESS AT OUR EXPENSE VIA THE UNITED STATES POSTAL SERVICE. THANK YOU.

AO 440 (Rev. DC - September 2003) Summons in a Civil Action

# UNITED STATES DISTRICT COURT
## District of Columbia

Jimmy A. Bell,

      Plaintiff,

        V.

55K, Inc. t/a "Club 55",
and
R&R Entertainment, LLC t/a "Club 55",

      Defendants.

**SUMMONS IN A CIVIL CASE**

CASE NUMBER  1:06CV00586

JUDGE: John D. Bates

CA  DECK TYPE: Personal Injury/Malpractic

DATE STAMP: 03/30/2006

TO: (Name and address of Defendant)

55K, Inc. t/a "Club 55"
55 K Street, SE
Washington, DC 20003

**YOU ARE HEREBY SUMMONED** and required to serve on PLAINTIFF'S ATTORNEY (name and address)

Janelle N. Richards, Esq.
9610 Marlboro Pike
Upper Marlboro, Maryland 20772

an answer to the complaint which is served on you with this summons, within _____ 20 _____ days after service of this summons on you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. Any answer that you serve on the parties to this action must be filed with the Clerk of this Court within a reasonable period of time after service.

NANCY M. MAYER-WHITTINGTON                    MAR 3 0 2006

CLERK                                                               DATE

_____
(By) DEPUTY CLERK

AO 440  (Rev. DC - September 2003)  Summons in a Civil Action

| RETURN OF SERVICE | | |
|---|---|---|
| Service of the Summons and complaint was made by me[1] | DATE | |
| NAME OF SERVER *(PRINT)* | TITLE | |

*Check one box below to indicate appropriate method of service*

☐ Served personally upon the defendant.  Place where served:

☐ Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.

    Name of person with whom the summons and complaint were left:

☐ Returned unexecuted:

☐ Other (specify):

| STATEMENT OF SERVICE FEES | | |
|---|---|---|
| TRAVEL | SERVICES | TOTAL |

### DECLARATION OF SERVER

    I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on _____    _____
                      Date                       *Signature of Server*

_____
                                 *Address of Server*

(1) As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure.

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

Nancy M. Mayer-Whittington
Clerk

## NOTICE OF RIGHT TO CONSENT TO TRIAL
## BEFORE UNITED STATES MAGISTRATE JUDGE

The substantial criminal caseload in this Court and the requirements of the criminal Speedy Trial Act frequently result in a delay in the trial of civil cases. Aware of the hardship and expense to the parties, counsel, and witnesses caused by the delays which are beyond the control of the Court, this notice is to advise you of your right to a trial of your case by a United States Magistrate Judge. By statute, 28 U.S.C. § 636(c), Fed.R.Civ.P.73 and Local Rule 502, the parties, by consent, can try their case by means of a jury trial or bench trial before a United States Magistrate Judge. Appeals from judgments and final orders are taken directly to the United States Court of Appeals for the District of Columbia Circuit, in the same manner as an appeal from a judgment of a District Judge in a civil case.

## WHAT IS THE PROCEDURE?

One of the matters you are required to discuss at the meet-and-confer conference mandated by Local Rule 206 is whether the case should be assigned to a United States Magistrate Judge for all purposes, including trial.

All parties must consent before the case is assigned to a Magistrate Judge for trial. You may consent at any time prior to trial. If you expressly decline to consent or simply fail to consent early in the case, you are not foreclosed from consenting later in the case. However, a prompt election to proceed before a Magistrate Judge is encouraged because it will facilitate a more orderly scheduling of the case.

Attached is a copy of the "Consent to Proceed Before a United States Magistrate Judge for All Purposes" form. Your response should be made to the Clerk of the United States District Court only.

## WHAT IS THE ADVANTAGE?

The case will be resolved sooner and less expensively. The earlier the parties consent to assigning the case to a Magistrate Judge the earlier a firm and certain trial date can be established, even if the case is to be tried to a jury.

Upon the filing of the consent form and with the approval of the District Judge, the case will be assigned for all purposes to a Magistrate Judge.

CO-942A
Rev 3/95
Rev 7/99

## IN THE UNITED STATE DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**JIMMY A. BELL**
9610 Marlboro Pike
Upper Marlboro, MD 20772

       Plaintiff,       :    Civil Case No.:

v.                 :    JURY DEMAND

**R&R ENTERTAINMENT, L.L.C.,**
**t/a "CLUB 55,"**
55 K Street, S.E.
Washington, D.C. 20003

       :    CASE NUMBER  1:06CV00586

and

       :    JUDGE: John D. Bates

**55K, INC., t/a "CLUB 55,"**
55 K Street, S.E.
Washington, D.C. 20003

       :    DECK TYPE: Personal Injury/Malpractic

       :    DATE STAMP: 03/30/2006

       Defendants

## COMPLAINT

COMES NOW, Plaintiff Jimmy A. Bell by and through counsel, Janelle N. Richards, Esquire of the Law Office of Jimmy A. Bell, P.C. and respectfully presents this Complaint against the Defendants for violations of the D.C. Human Rights Act and other common law torts.

## JURISDICTION AND VENUE

1.    Plaintiff is a resident of Maryland, the Defendants are 55K Inc., incorporated in the District of Columbia, and R&R Entertainment, L.L.C.; registered in the District of Columbia, and the amount in controversy exceeds the sum or value of $75,000.00 and therefore jurisdiction is proper.

2.    Venue is proper in the District of Columbia as the actions complained of occurred in the District of Columbia.

## STATEMENT OF FACTS

3.      Plaintiff is a resident of Maryland.

4.      Defendants are, respectively, a corporation incorporated and operating within the

District of Columbia, and a limited liability corporation registered and operating

within the District of Columbia.

5.      On the night of March 26 into the early morning hours of March 27, 2006,

Plaintiff and Deon Green ("Mr. Green") were patrons of Defendants' night club.

6.      Upon arrival at Defendants' night club, Plaintiff noticed, as he has had occasion

to notice in the past, that a Metropolitan Police Department cruiser was parked in

the alleyway adjacent to the entrance of the club.

7.      After paying the entry charge for himself and Mr. Green, Plaintiff asked where

they might be seated.  Plaintiff and Mr. Green were informed that for the price of

a bottle of Champagne, they would be seated in the VIP section.  Plaintiff ordered

two bottles of Champagne, and he and Mr. Green took their places in the VIP

area.

8.      The VIP area of the Club 55 is a reserved section, where guests are seated on a

red couch for their comfort.  Plaintiff ordered additional Champagne for some of

the women present in the Club.  Plaintiff and Mr. Green then proceeded to watch

the Club 55's entertainment, which on that evening was a talent competition.

9.      After spending quite some time at Club 55 in the VIP area, without any incident

whatsoever, Plaintiff and Mr. Green decided they wanted to leave.  Plaintiff asked

for his bill, and he and Mr. Green sat and waited for it to arrive, and to see who

the winner of the talent competition would be.

10.  Before their bill had been taken care of, a woman dressed as a man came into the VIP area and sat on the red couch Plaintiff had paid money to reserve for himself and Mr. Green. Plaintiff did not know this person; he looked to make sure he did not know this person, and then asked whether they were acquainted. This person responded to Plaintiff's inquiry with a profanity. Mr. Green started to intervene, but Plaintiff said that it was the job of Club 55's security to take care of unruly patrons, and they should get security to address the situation.

11.  Plaintiff promptly asked his server, Janie, if she would call security because he did not know the person who had sat on the couch whose use he had paid for, and he was uncomfortable with a stranger just coming up, taking a seat and using profanity. Janie attempted to explain to the person that she was in the VIP section, that Plaintiff had paid to be there, and that it was an area where a special entry fee was required.

12.  The woman responded to Janie by saying "F-ck you, b-tch, I ain't gotta move nowhere." Mr. Green again indicated that he would like to intervene with the woman on Plaintiff's behalf, and Plaintiff again stated to Mr. Green that the job of intervention with an unruly patron was one for Club 55's security staff.

13.  At that time, Janie brought a security person to the VIP area. The security guard was about 5'11", weighed around 280-300 pounds, and had twist-type braids in his hair. He spoke with the woman who was being disruptive, and she became irate and screamed profanities at the security guard. She then pointed at Plaintiff and Mr. Green and stated she would meet them out front where she would "kill" them.

14.    Plaintiff asked the security person to remove the woman from the premises, and to call the police as a threat had been made on his life that made him fear greatly for his safety in and around Club 55. Plaintiff again asked the security guard to call the police. The security guard did not do so. He stated to Plaintiff, "She's just a girl."

15.    The woman then shouted "F-ck you, I'll get you now." She and at least three other people closed in on Plaintiff and Mr. Green. Plaintiff and Mr. Green were trapped, with no place to retreat or avenue of escape and with their backs literally to the wall. These people assaulted Plaintiff and Mr. Green. Mr. Green was struck in the head with a glass.

16.    Plaintiff continued to shout for the club staff to call the police. The Club staff continuously failed to heed Plaintiff's request, and instead stated that they were going to remove Plaintiff and Mr. Green from the club. Mr. Green stated that since there was a police cruiser parked outside, he would go and get the police himself. Mr. Green proceeded to leave the club, followed by several persons who picked up bottles and glasses from tables as they followed Mr. Green. Plaintiff had never before seen Club staff allow patrons to pick up glasses and bottles and attempt to exit the club with such items, but on this night, the Club staff allowed it to occur.

17.    Plaintiff walked towards the entrance of the Club to ensure Mr. Green had made it safely to the police cruiser parked outside of the Club. When the Plaintiff arrived at Club 55's front door, Plaintiff observed four people attacking Mr. Green with bottles. Security was standing by, watching and did nothing to intervene or stop

4

the attack on Mr. Green. Although security is responsible for the safety of patrons within 100 feet of the club, this vicious assault, occurring right under the Club 55's entry awning, prompted no response from security.

18.    Plaintiff had his back to the door of the Club 55. He and Mr. Green turned to security and again pleaded that they call the police. The security guard at that point was more concerned with Plaintiff's tab being paid. Plaintiff informed the security guard that the incident was the Club's fault, that he had told them from the beginning to call the police, and they had heard and did not do so. In fact, security did nothing. The security person started shouting at Plaintiff that he did not work for Plaintiff, that Plaintiff ought not to talk to him in that manner, and that if Plaintiff continued to do so, he would kick Plaintiff's ass.

19.    Another security guard thereupon grabbed Plaintiff. This security guard carried Plaintiff outside and told Plaintiff he could not come back into the Club 55. Plaintiff still had not paid his tab. He had given a credit card, and the charge had cleared, but he had not yet signed the charge of over $700.00. It was at this point that Plaintiff realized that he had been stabbed, and that he was bleeding profusely.

20.    Plaintiff asked to come back into the Club 55, because he desperately needed to call for medical help and report the incident to the police. Plaintiff pointed out to Club 55 staff that the persons responsible for the assault on Mr. Green were still outside the Club 55, and that "your girl with the knife" was "right there." Club 55 security and staff still did not call the police.

21.  Plaintiff held his blood-covered hand out and said that he wanted Club 55 security and staff to see it. They did. The owner of the Club 55, Roland Lee ("Mr. Lee"), had by now arrived on the scene. Plaintiff told Mr. Lee "You can see what's going on -- call the police." Mr. Lee did not call the police. Mr. Lee asked that the Plaintiff speak with him; Plaintiff replied that he could not talk, he had been stabbed. Plaintiff again asked Mr. Lee to call an ambulance, and the police. Mr. Lee still would not comply with the Plaintiff's request.

22.  Mr. Lee and his staff implored Plaintiff "not to do this." Plaintiff asked "Do what? I'll pay your bill. I've been stabbed, and I need you to call an ambulance and call the police." No one called an ambulance; no one called the police. At this point, the attackers were still present just outside the Club 55.

23.  A Club 55 management employee, with whom Plaintiff had not had any interaction with during the course of the evening, came along and told Plaintiff he would "f-ck" Plaintiff "up." He insisted that Plaintiff come and sign for his bill. Plaintiff was still bleeding profusely from a stab wound; no one had called an ambulance. Plaintiff called to Mr. Lee, and said "Did you see this?" The employee continued to state he would "f-ck" Plaintiff "up."

24.  By now, Plaintiff could see that the crowd in front of the Club had begun to disperse. Another security person named Tyree, acquainted with Plaintiff from Plaintiff's prior visits to the Club 55, came and asked Plaintiff to talk. Plaintiff said again that he could not talk; that he had been stabbed; that the club staff, management, and owner knew he had been stabbed; that he was bleeding; that the club staff, management, and owner knew he was bleeding; that he had asked over

and over for an ambulance and the police to be called; that the club staff,

management, and owner knew he had made these requests; and that no one, not a

staff member, nor a manager, nor the owner had called an ambulance or the

police. Plaintiff informed Tyree that what he intended to do immediately was to

drive himself to the hospital, because he had been stabbed and was bleeding and

no one would call an ambulance or the police.

25.     Plaintiff then left the front of the Club 55, walked down the street to his vehicle,

got in, and drove himself to Howard University Hospital ("HUH"). En route,

Plaintiff was in a constant struggle to continue driving safely without passing out

from considerable blood loss. Doctors and other medical personnel at HUH

treated Plaintiff for a stab wound. These doctors and other medical personnel

informed Plaintiff that he was very lucky, and that a person of slighter build and

weight would certainly have sustained a collapsed lung, and would very possibly

have died on the scene. Mr. Green was treated at HUH for a stab wound to the

head.

26.     Club 55 has a history of violent incidents occurring within and surrounding its

premises. Specifically, on November 2, 2005, an off-duty police officer was

robbed and assaulted inside the men's bathroom. The off-duty officer was using

the restroom when a patron approached the officer from behind and starting

beating the officer. The nature of the beating was such that the officer feared for

his life and was forced to discharge his service weapon. As a result of this

incident, the officer received lacerations on his forehead and sustained a busted

blood vessel over his left eye.

27.   An incident report regarding the November 2, 2005 beating of an off-duty police officer was reported to the First District Police Station as well as to the Alcoholic Beverage Regulation Administration the very same night.

## COUNT I: NEGLIGENCE

### (All Defendants)

28.   Plaintiff re-pleads and re-alleges Paragraphs 1 through 27, with the same force and effect as if set forth separately at length herein.

29.   Defendants are incorporated within the District of Columbia.

30.   Defendants, as owner of the premises and business, owe a duty of care to their patrons to protect against harm.

31.   Defendants breached this duty owed to Plaintiff by failing to intervene and call the police when an unknown woman made threats upon Plaintiff's life in the presence of the Club's security.

32.   Plaintiff was stabbed on Defendants' premises because the Defendants breached their duty of care.  Had Defendants not breached their duty of care, Plaintiff would not have been stabbed.

33.   As a result of the negligent actions of the Defendants, Plaintiff suffered bodily injuries, experienced severe mental anguish, experienced conscious pain and suffering, incurred reasonable and necessary medical and hospital expenses, suffered inconvenience and discomfort, and lost income.

34.   Plaintiff seeks the following relief:

35.   Compensatory and punitive damages of $500,000 (FIVE HUNDRED THOUSAND).

36.   Pre- and post-judgment interest.

37.   The cost of litigation, including reasonable attorney's fees and expert witness fees.

38.   Such other relief as may be just.

## COUNT II: NEGLIGENCE

### (All Defendants)

39.   Plaintiff re-pleads and re-alleges Paragraphs 1 through 38, with the same force and effect as if set forth separately at length herein.

40.   Defendants are incorporated within the District of Columbia.

41.   Defendants, as owner of the premises and business, owe a duty of care to their patrons to protect against harm.

42.   Defendants breached this duty owed to Plaintiff by failing to intervene and/or call the police and an ambulance after Plaintiff had been stabbed upon the Defendants' premises.

43.   Plaintiff was stabbed on Defendants' premises because the Defendants breached their duty of care.  Had Defendants not breached their duty of care, Plaintiff would not have been stabbed.

44.   As a result of the negligent actions of the Defendants, Plaintiff suffered bodily injuries, experienced severe mental anguish, experienced conscious pain and suffering, incurred reasonable and necessary medical and hospital expenses, suffered inconvenience and discomfort, and lost income.

45.   Plaintiff seeks the following relief:

46.    Compensatory and punitive damages of $500,000 (FIVE HUNDRED

THOUSAND).

47.    Pre- and post-judgment interest.

48.    The cost of litigation, including reasonable attorney's fees and expert witness

fees.

49.    Such other relief as may be just.

## COUNT III: NEGLIGENT TRAINING & SUPERVISION

### (All Defendants)

50.    Plaintiff re-pleads and re-alleges Paragraphs 1 through 49, with the same force

and effect as if set forth separately at length herein.

51.    Defendants are incorporated within the District of Columbia.

52.    Defendants, as owner of the premises and business, owe a duty of care to their

patrons to adequately train and supervise employees to protect against harm.

53.    Defendants breached this duty owed to Plaintiff by failing to train and/or

supervise employees to intervene and/or call the police and an ambulance after

Plaintiff had been stabbed upon the Defendants' premises.

54.    Plaintiff was stabbed on Defendants' premises because the Defendants breached

their duty of care.  Had Defendants not breached their duty of care, Plaintiff

would not have been stabbed.

55.    As a result of the negligent actions of the Defendants, Plaintiff suffered bodily

injuries, experienced severe mental anguish, experienced conscious pain and

suffering, incurred reasonable and necessary medical and hospital expenses,

suffered inconvenience and discomfort, and lost income.

56.   Plaintiff seeks the following relief:

57.   Compensatory and punitive damages of $500,000 (FIVE HUNDRED

      THOUSAND).

58.   Pre- and post-judgment interest.

59.   The cost of litigation, including reasonable attorney's fees and expert witness

      fees.

60.   Such other relief as may be just.

## COUNT IV: ASSAULT

### (All Defendants)

61.   Plaintiff re-pleads and re-alleges Paragraphs 1 through 60, with the same force

      and effect as if set forth separately at length herein.

62.   Defendants are incorporated within the District of Columbia.

63.   Defendants, as owner of the premises and business, owe a duty of care to their

      patrons to protect against harm.

64.   After having been attacked by numerous unknown individuals, Plaintiff

      repeatedly requested assistance from the Club's staff.  Plaintiff further requested

      that the staff call the police.

65.   A security guard responded to Plaintiff by stating that he did not work for Plaintiff

      and that he would kick Plaintiff's ass.

66.   As a result of the security guards actions, Plaintiff was placed in reasonable

      apprehension of imminent bodily injury.

67.   Plaintiff seeks the following relief:

11

68.    Compensatory and punitive damages of $500,000 (FIVE HUNDRED THOUSAND).

69.    Pre- and post-judgment interest.

70.    The cost of litigation, including reasonable attorney's fees and expert witness fees.

71.    Such other relief as may be just.

## COUNT V: ASSAULT

### (All Defendants)

72.    Plaintiff re-pleads and re-alleges Paragraphs 1 through 71, with the same force and effect as if set forth separately at length herein.

73.    Defendants are incorporated within the District of Columbia.

74.    Defendants, as owner of the premises and business, owe a duty of care to their patrons to protect against harm.

75.    After having been stabbed and while bleeding profusely, an employee of the Defendants approached Plaintiff demanding that Plaintiff pay his bill.

76.    Plaintiff informed the employee that he had been stabbed, to which the employee responded that Plaintiff should pay his bill or he would jump on Plaintiff.

77.    As a result of the employee's actions, Plaintiff was placed in reasonable apprehension of imminent bodily injury.

78.    The owner of the Club, Mr. Lee witnessed this exchange and in failing to correct the employee's behavior, ratified the actions taken by his employee.

79.    Plaintiff seeks the following relief:

12

80.  Compensatory and punitive damages of $500,000 (FIVE HUNDRED THOUSAND).

81.  Pre- and post-judgment interest.

82.  The cost of litigation, including reasonable attorney's fees and expert witness fees.

83.  Such other relief as may be just.

## COUNT VI: BATTERY

### (All Defendants)

84.  Plaintiff re-pleads and re-alleges Paragraphs 1 through 83, with the same force and effect as if set forth separately at length herein.

85.  Defendants are incorporated within the District of Columbia.

86.  Defendants, as owner of the premises and business, owe a duty of care to their patrons to protect against harm.

87.  After having been attacked by numerous unknown individuals, Plaintiff repeatedly requested assistance from the Club's security staff.  Plaintiff further requested that the staff call the police.

88.  A security guard responded to Plaintiff by stating that he did not work for Plaintiff and that he would kick Plaintiff's ass.  The security guard then proceeded to pick Plaintiff up from behind and carry him from the Club.

89.  The security guard's actions constituted an unwanted, offensive touching of Plaintiff's person.

90.  Plaintiff seeks the following relief:

13

91.    Compensatory and punitive damages of $500,000 (FIVE HUNDRED

       THOUSAND).

92.    Pre- and post-judgment interest.

93.    The cost of litigation, including reasonable attorney's fees and expert witness

       fees.

94.    Such other relief as may be just.

## COUNT VII: VIOLATION OF THE D.C.
## HUMAN RIGHTS ACT § 2-1402.31
(All Defendants)

95.    Plaintiff re-pleads and re-alleges Paragraphs 1 through 94, with the same force

       and effect as if set forth separately at length herein.

96.    The effect of Defendants' acts and practices as enumerated herein has been to

       deprive Plaintiff of rights secured to him by the D.C. Human Rights Act § 2-

       1402.31.

97.    The D.C. Human Rights Act § 2-1402.31(a)(1) states that it is an unlawful

       discriminatory practice "to deny, directly or indirectly, any person the full and

       equal enjoyment of the goods, services, facilities, privileges, advantages, and

       accommodations of any place of public accommodations" based on sex, source of

       income, or place of business.

98.    Although Plaintiff repeatedly asked that the unruly and violent woman be

       removed from the Club, the staff refused to do so, stating, "she's just a girl."

99.    When Plaintiff continued to request assistance from the Club staff, as well as

       requesting that the police be called, a security guard responded to Plaintiff by

       stating that he did not work for Plaintiff and that he would kick Plaintiff's ass.

14

100.  The security guard then picked Plaintiff up and carried him from the club, even though he had refused to remove the unknown woman from the premises.

101.  The Defendants denied Plaintiff full and equal access to a place of public accommodation when Plaintiff was removed from the Club, but the woman who threatened Plaintiff's life was not removed because she was "just a girl."

102.  Plaintiff seeks the following relief:

103.  Compensatory and punitive damages of $500,000 (FIVE HUNDRED THOUSAND).

104.  Pre- and post-judgment interest.

105.  The cost of litigation, including reasonable attorney's fees and expert witness fees.

106.  Such other relief as may be just.

## JURY DEMAND

107.  Plaintiff demands a trial by jury.

Respectfully submitted,

*Janelle N. Richards*

Janelle N. Richards, Bar No. 16520
Law Office of Jimmy A. Bell, P.C.
9610 Marlboro Pike
Upper Marlboro, MD   20772
(301) 599-7620
(301) 599-7623 (Fax)

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

# INITIAL ELECTRONIC CASE FILING
# ORDER

Subsequent filings in this case must be made electronically using the Court's Electronic Case Filing System (ECF) pursuant to Local Rule 5.4.

ORDERED that counsel shall:

- Submit in paper, the original and copy of the complaint/notice of removal/petitions for habeas corpus and any accompanying papers. Additionally, litigants are hereby required to provide those filings in PDF Format on a floppy disk or CD-Rom compact disk. The disk should be clearly labeled with the case number (if known) and the name of the parties. If unable to deliver the filing on a disk at the time of the new case filing, counsel should e-mail the initiating document and accompanying papers to dcd_cmecf@dcd.uscourts.gov by the close of business the day the new case was filed. Failure to supply electronic copies of the new case in a timely manner, will result in the attorney's name being added to the attorney non-compliant list and shared with the Court's ECF Judge's Committee. Regardless of what option, counsel chooses the complaint/notice of removal and accompanying papers must come to the Court as PDF documents. Each exhibit to the new case shall be in a separate PDF file. Failure to submit PDF versions of the complaint/notice of removal and other documents will delay the opening of the case in ECF.

- Register, if not previously registered, to become an electronic filer by completing and returning the enclosed ECF Registration Form found on the Court's Website at (www.dcd.uscourts.gov). The login and password are case specific and can be used for all cases.

- All subsequent filings must be made electronically.

- Have a PACER (Public Access to Court Electronic Records) account, in order to view dockets and documents. Call 1-800-676-6856 or visit www.pacer.psc.uscourts.gov for additional information.

- Schedule a training class at the Courthouse by going to the Court's ECF Internet Website (www.dcd.uscourts.gov/ecf.html). Also, filing instructions and an interactive tutorial can be found at this Internet Website.

## BATES, J.JDB
UNITED STATES DISTRICT JUDGE

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

### ELECTRONIC CASE FILES
### Attorney/Participant Registration Form

## LIVE SYSTEM

This form shall be used to register for an account on the Court's Electronic Case Files (ECF) system and to subscribe to the ECF EMail (Listserver) notification service. Registered attorneys and other participants will have privileges both to electronically submit documents, and to view and retrieve electronic docket sheets and documents for all cases assigned to the Electronic Case Files system. Listserver subscribers receive email messages whenever the Court wishes to electronically notify ECF registrants of pertinent ECF information.

The following information is required for registration:

First Name/Middle Initial/Last Name _____

Last four digits of Social Security Number _____

DC Bar ID#. _____

Firm Name _____

Firm Address _____

Voice Phone Number _____

FAX Phone Number _____

Internet E-Mail Address _____

By submitting this registration form, the undersigned agrees to abide by the following rules:

1.    This system is for use only in cases permitted by the *U.S. District Court for the District of Columbia.* It may be used to file and view electronic documents, docket sheets, and notices. Please visit the Court's ECF Internet, www.dcd.uscourts.gov, website to schedule training.

2.    Pursuant to Federal Rule of Civil Procedure 11, every pleading, motion, and other paper (except list, schedules, statements or amendments thereto) shall be signed by at least one attorney of record or, if the party is not represented by an attorney, all papers shall be signed by the party. An attorney's/participant's password issued by the court

combined with the user's identification, serves as and constitutes the attorney's/participant's signature. Therefore, an attorney/participant must protect and secure the password issued by the court. If there is any reason to suspect the password has been compromised in any way, it is the duty and responsibility of the attorney/participant to immediately notify the court. This should include the resignation or reassignment of the person with authority to use the password. The Court will immediately delete that password from the electronic filing system and issue a new password.

3.      An attorney's/participant's registration will not waive conventional service of a summons and complaint, subpoena, or other judicial process; submit the client to the jurisdiction of the Court; or operate as a consent to accept service of pleadings, documents, and orders in actions in which such attorney/participant has not entered an appearance. An attorney's/participant's registration will constitute a waiver in law only of conventional service of other non-process pleadings, documents, and orders in the case. The attorney/participant agrees to accept, on behalf of the client, service of notice of the electronic filing by hand, facsimile or authorized e-mail.

4.      Upon receipt of your login and password, you are strongly encouraged to change your password, which may be done through the Utilities function, to a name easily recalled. **You may be subjected to a fee, should the Clerk's Office have to create a new password for you, or alternatively, you may be required to appear in person to receive your new password.**

5.      Attorneys who are active members of the bar of this Court, or government attorneys who are employed or retained by the United States, or who have been permitted to proceed *pro hac vice*, must file pleadings electronically.

Please return this form to:            U.S. District Court for the District of Columbia
                                       Attn:   Attorney Admissions
                                       333 Constitution Avenue NW, Room 1825
                                       Washington, DC  20001

Or FAX to:                             Peggy Trainum
                                       U.S. District Court for the District of Columbia
                                       (202) 354-3023

Applicant's Signature

| Full Last Name | Initial of First Name | Last 4 Digits SS# |
|---|---|---|